IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

PATRICK O. HARRIS

VS.                                                CIVIL ACTION NO. 1:12CV189-DAS

ROCK TENN CP, LLC

# MEMORANDUM OPINION

This matter is before the court on the defendant's motion for summary judgment (# 43). Also before the court are the defendant's motion to strike (# 50) and the defendant's motion for leave to file supplemental authority (# 55). In accordance with the provisions of 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of final judgment on any or all of the plaintiff's claims. After considering the motions and the responses thereto, the court finds as follows:

## I. FACTS

Patrick Harris worked for the defendant, Rock Tenn CP, LLC, ("Rock Tenn") and Rock Tenn's predecessor from August 1990 until his termination on October 13, 2011. Rock Tenn manufactures packaging products, and when Harris began working there he worked the second shift stacking boxes. After approximately five years, he moved to running the "jumbo," also on the second shift and five years later began driving a forklift on the second shift. Next, Harris moved to the first shift or "day shift," making glue/starch for the corrugator until 2007, when Rock Tenn installed an automated system for making glue/starch and moved Harris to the third shift. Two years later, in the summer of 2009, Harris made his first application for intermittent

FMLA leave as a result of sleep apnea. He was treated for this condition on August 5, 2009 and September 10, 2009.

In the spring of 2011 Rock Tenn obtained new waste water equipment and created a waste water treatment operator job. Harris wanted this job and wanted to perform this job on the first shift. However, while this job paid the same as Harris's previous starcher job, the operator's duties differed from the starcher job, and the starcher job lacked the same need for detail as the waste water job. Indeed, the equipment manufacturer made clear the equipment required an operator with a meticulous adherence to procedure. Rock Tenn hired Jason Bridges as the waste water treatment operator.

Shortly after Rock Tenn gave the job to Bridges in 2011, Harris had a second bout with sleep apnea, and on July 14, 2011, he again applied for intermittent FMLA leave. When he sought intermittent leave, Rock Tenn provided to Harris a "Notice of Eligibility and Rights and Responsibilities." Along with that document Rock Tenn provided a certification form, setting forth the information necessary to support his request. Harris had to return the certification form no later than July 29, 2011, and when he returned it on July 27, he obtained intermittent leave. On August 22, 2011, Harris sought continuous leave rather than intermittent leave and was again given a "Notice of Eligibility and Rights and Responsibilities" and another certification form. This time the certification form had to be returned no later than September 7, 2011. However, on that same day – August 22 – Tenn Rock received a notice from Harris's treating physician, Dr. William Edmonson, explaining that Harris could "return to regular duties."[1] Additionally, on

---

[1] Seven days earlier, Dr. Edmonson had written a letter to "whom it may concern," recommending a day shift for Mr. Harris *if possible*. Two days after that he wrote a second letter to "whom it may concern" explaining that Harris suffered from sleep apnea and shift work

August 10, Rock Tenn had received notice from Internal Medicine Associates of Tupelo that Harris could return to work on August 15 "with no restrictions." On August 31, Tenn Rock received notice from Med Serve that Harris could return to work on September 2.

Despite receiving the "Notice of Eligibility and Rights and Responsibilities" and the second certification form on August 22, Rock Tenn never received any additional medical information. Consequently, Rock Tenn had nothing to use to make its determination as to whether Harris was entitled to continuous leave or not. When it did not receive any additional information suggesting Harris needed continuous leave, Rock Tenn notified Harris that without the additional information he would be discharged. Nevertheless, Harris provided nothing and did not show up for work from August 25, 2011 until his October 13, 2011 discharge.

Harris then filed the present lawsuit, and made the following claims:

(1) Under the Family Medical Leave Act ("FMLA"), he made a (a) retaliation claim; and (b) an interference claim;

(2) Under the Americans with Disabilities Act ("ADA"), he made (a) a failure to accommodate claim; (b) a discrimination claim for failing to hire him as the waste water treatment operator; and (c) a discrimination claim for terminating him; and

(3) Under Title VII of the Civil Rights Act ("Title VII") and 42 U.S.C. § 1981, he made a (a) a failure to promote claim; (b) a discrimination claim for failing to hire him as the waste water treatment operator; and (c) a discrimination claim for terminating him.

The court will address each of these claims in turn.

---

sleep disorder and that he believed Harris would "benefit most from having a day shift "*if feasible*." While it is clear Dr. Edmonson believed Harris would benefit from a change to the day shift, he never contradicted his subsequent letter written August 22 releasing him to regular duties.

## II. DISCUSSION

### **Summary Judgment**

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure if "[t]here is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (l986). To determine whether there is a genuine dispute as to any material fact, the court must consider "all of the evidence in the record but refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The court

must make all reasonable inferences in favor of the non-moving party, *Reeves*, 530 U.S. at 150; "however, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

## 1.  Family Medical Leave Act

*a. Retaliation*

FMLA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any individual" who takes FMLA leave or engages in other protected activity under the Act. 29 U.S.C. § 2615(a)(2) (2012); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). Where, as here, the employee has not offered direct evidence of discrimination, the court applies the familiar three-step burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-03 (1973). First, the employee must establish a *prima facie* case of discrimination. To do so, he must show: (1) he was protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) he was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because he took the FMLA leave. *Hunt v. Rapides Healthcare System, LLC* 277 F.3d 757, 768 (5th Cir. 2001). Second, if the plaintiff makes his *prima facie* case, the burden shifts to the employer to provide a legitimate, non-discriminatory or non-retaliatory reason for the adverse action. Finally, if the employer meets its burden, the employee must show that the reason provided was a pretext for discrimination or retaliation. *Hunt*, 277 F.3d at 768.

In the present case, the court finds there are no real issues as to whether Harris made out his *prima facie* case or whether Rock Tenn provided a legitimate non-discriminatory or non-

retaliatory reason for discharging him. As Harris points out, he was protected under the FMLA because Rock Tenn had the requisite number of employees and he had worked the hours needed to qualify for protection. Clearly he suffered an adverse employment decision, and the time span between Harris's act and his termination was close enough to meet his burden. *See McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007).

Similarly, the court finds Rock Tenn met its burden, arguing it discharged Harris because when he sought continuous leave rather than intermittent leave, he failed to provide the supporting documentation requested by Rock Tenn. As explained *supra*, Rock Tenn provided Harris the forms he needed to show he had an eligible condition and asked that he have his doctor complete the form and return it no later than September 7, 2011. For whatever reason, despite having had his doctor complete such a form in the past, Harris failed to return the documentation. Rock Tenn then discharged Harris for failing to provide the requested certification and because rather than provide the requested form explaining Harris could not return to work, Dr. Edmonson wrote a letter explaining that Harris *could* return to work.

The thrust of Harris's argument centers around the final step in the *McDonnell Douglas* framework, and the court finds Harris has failed to show this explanation was a pretext for discharging him in violation of the FMLA. "An employer's explanation is false or unworthy of credence if it is not the real reason for the employment action." *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). In order to raise a genuine dispute of material fact with respect to pretext, the nonmovant must come forward with specific facts; "[c]onclus[ory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a

6

genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).

In response to Rock Tenn's explanation, Harris argues only that because he had provided a similar form in the past, "[i]t was unreasonable to ask Harris to go through the whole process again the next month." As the defendant points out federal law allows Rock Tenn to do just what it did. *See* C.F.R. § 825.305(a). Indeed, that regulation provides in part that "[a]n employer's oral request to an employee to furnish any subsequent certification is sufficient." In other words, by providing an additional form and then re-contacting Harris and explaining he needed to provide additional certification, Rock Tenn actually did more than the law required. It is clear to the court that Rock Tenn held no animus toward the plaintiff but only followed its procedure, and Harris simply did not respond as requested.[2]

Accordingly, the court finds no genuine issue of material fact exists as to Harris's retaliation claim filed pursuant to the FMLA, and thus, summary judgment is appropriate as to this claim.

*b. Interference*

The FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1) (2112). To prevail on a cause of action for interference with FMLA rights, an employee must

---

[2]The court is aware that Harris contends he contacted Rock Tenn and told them his physician could not complete his "paperwork" until he obtained "further information from a home health agency." However, during his deposition, Harris made it clear that the paperwork to which he referred was simply paperwork for his physician to obtain a CPAP machine. There is nothing to suggest that Harris's physician needed information from a home health agency to complete the certification form provided by Rock Tenn.

prove both that the employer interfered with, restrained, or denied his exercise of FMLA rights, and that the employee was prejudiced by this violation. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). Interference with FMLA rights can include "for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave" or "manipulation by a covered employer to avoid responsibilities under the FMLA." 29 C.F.R. § 825.220(b).

Harris claims Rock Tenn interfered with his rights under the FMLA when it mandated further certification for continuous leave over and above the certification he received for intermittent leave. In support of his argument, Harris explains that he placed Rock Tenn on notice when he sought intermittent leave, and despite the fact that he did not provide further information for continuous leave, he "fails to see where this would make any difference." The court, however, sees the difference. An employer who receives notice related to a request for intermittent leave may well take different steps than one which receives notice that a particular employee may be out for a lengthy continuous amount of time. The court can imagine numerous scenarios where the employer's actions would differ and requiring additional certification when an employee wants to change his request appears perfectly reasonable. Understanding that and looking to the present facts, there is no dispute that Rock Tenn requested such additional information, and there is no dispute that Harris did not provide it.

Accordingly, the court finds no genuine issue of material fact exists as to Harris's interference claim filed pursuant to the FMLA, and thus, the court will grant summary judgment as to this claim.

## **2. Americans with Disabilities Act**

*a. Failure to Accommodate*[3]

In addition to his FMLA claim, Harris claims Rock Tenn discriminated against him because he was disabled and that they failed to provide him with a reasonable accommodation. Harris claims he is disabled because he suffers from sleep apnea and shift work disorder. The ADA prohibits discrimination on the basis of a disability, and expressly defines such discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112(b)(5)(a). To establish a claim for failure to accommodate, Harris must show that he: (1) had a disability; (2) was qualified for the job; (3) his employer knew of the disability; (4) he requested the accommodation; (5) a reasonable accommodation existed that would have allowed him to perform the essential functions of the job; and (6) the employer failed to provide a reasonable accommodation. *See Green v. Medco Health Solutions of Texas, LLC*, 947 F. Supp. 2d 712, 725 (N.D. Tex. 2013).

However, while it is unlawful under the ADA for an employer to fail to accommodate the known limitations of an employee's disability, "[a]n employee who needs an accommodation because of a disability has the responsibility of informing her employer." *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). The Fifth Circuit has recognized that "where the disability, resulting limitations, and necessary reasonable accommodations, are not

---

[3]The court notes that at various points in his brief Harris describes this claim as a "failure to accommodate" claim and at others, he refers to a "failure to promote." Under the facts provided and the way in which Harris couches this claim, it appears clear to the court that he is arguing – at least under the ADA – a failure to accommodate claim and a discrimination claim.

9

open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Chevron*, 570 F.3d at 621 (quoting *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996)). In other words, the plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

Here, Harris argues first that Rock Tenn failed to accommodate him when it refused to respond to his request for accommodation. Harris claims that when he asked the plant manager whether he could move back to the day shift because of his sleep apnea and shift work disorder, the manager responded only with "no." However, once an employee requests accommodation, "the ADA requires that the employer and the employee engage in an interactive process to determine a reasonable accommodation. *Cortez v. Raytheon Co.*, 663 F. Supp. 2d 514, 524 (N.D. Tex. 2009). "Courts interpreting the interactive process requirement have held that when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Loulseged v Akzo Nobel, Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). On the other hand, these courts have also held that when "the employer has come forward with Rule 56 evidence that no reasonable accommodation existed, the plaintiff – after discovery – must meet the evidence and create a jury question on his ultimate burden." *See Moore v. Nissan North America, Inc.*, 2012 WL 2608792 at *12 (S.D. Miss. July 5, 2012); *see also McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 100 (2d Cir. 2009) (collecting cases) (affirming summary judgment and observing that "each of our sister Circuits to have considered the issue has concluded that failure to engage in

an interactive process does not form the basis of an ADA claim in the absence of evidence that accommodation was possible").

In the present case, Harris does not provide any evidence that an available position existed at the time of his request. As Rock Tenn points out, the law does not require an employer to create a position. *See Foreman v. Babcock & Wilcox, Co.*, 117 F.3d 800, 810 (5th Cir. 1997) (holding for job reassignment to be a reasonable accommodation, the position must exist and be vacant). Harris argues only that he "had performed numerous jobs in the more than twenty years he worked at the plant." He then continued, "[t]here were numerous jobs on the day shift that [he] could perform." The law does not provide a remedy when a plaintiff can show only that there were numerous jobs he could perform. Rather, the burden was on Harris to show that such jobs were available and vacant, and Harris has not done so.

b. *Discrimination*

I. *Waste water treatment operator*

Harris also alleges a discrimination claim under the ADA. Specifically, Harris claims Rock Tenn discriminated against him on the basis of his disability when it did not hire him as the waste water treatment operator. Harris also argues Rock Tenn discriminated against him when it discharged him. As with the FMLA claim, the court looks to these claims, utilizing the *McDonnell Douglas* framework. In other words, Harris must first make out a *prima facie* case of discrimination. If he does so successfully, the burden shifts to the employer to articulate a "legitimate, non-discriminatory reason for the adverse employment action." *McInnis v. Alamo Community College Dist.* 207 F.3d 276, 281 (5th Cir. 2000). If the employer meets its burden, then the burden returns to the plaintiff to show that the legitimate non-discriminatory reason was

11

simply pretext. *Id*. To make out his *prima facie* case of discrimination, Harris must show that he: (1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action; and (4) was replaced by a non-disabled person or was treated less favorably than a non-disabled person. *See Daigle v. Liberty Life Ins. Co.* 70 F.3d 394, 396 (5th Cir. 1995).

In the present case, Harris argues Rock Tenn discriminated against him in violation of the ADA when it hired Jason Bridges as the waste water treatment operator rather than him. Assuming *arguendo*, that he made out his *prima facie* case, Rock Tenn responded with a legitimate, non-discriminatory reason for hiring Bridges instead of Harris. Specifically, Rock Tenn provided affidavit testimony of the plant manager, Jimmy Guin, that Jason Bridges "demonstrated a unique adherence to procedure that the job required." Plant Superintendent, Terry Ballard, explained in his affidavit that along with the plant manager, he participates in decisions concerning the selection of employees. Concerning the waste water treatment operator position, Ballard stated that when the plant manager approached him about who to hire he:

> [I]mmediately thought of Jason Bridges, who stood out for his consistently excellent adherence to procedure over years as a successful corrugator operator and as a lead in that department; I certainly did not consider Pat Harris the best candidate, as he had never had to tackle the procedures of being a lead, and, as my observation and supervisor Fred Lowery's reports reflected, Mr. Harris had caused problems in the starch room previously by failing to follow procedure.

In his deposition, Fred Lowery – Harris's former Supervisor – said: "I don't think [Harris] pays enough attention to operate [a machine]. He's a nice person and everything, but, you know, being around – you have to be very focused when you operate and stuff."

Harris responds to all of this, arguing the reasons provided – that the job needed someone who adhered strictly to procedure – was pretext. Specifically, he argues that because Rock Tenn

12

allowed Harris to operate the starch machine until the machine was shut down and because it never reprimanded Harris while he operated the starch machine, a reasonable jury could find that its refusal to hire him as waste water treatment operator was because he was disabled. The court does not agree.

Rock Tenn clearly met its burden, providing a legitimate, non-discriminatory reason for hiring Bridges rather than Harris as the waste water treatment operator. Harris cannot respond with essentially nothing and expect the court to send the case to a jury. Harris's burden is to show Rock Tenn's position is pretext. To demonstrate a "pretext for discrimination," Harris must show both that Rock Tenn's stated reason for its actions is false and that prohibited discrimination was the real reason for its decision. *See Travis v. Bd. of Regents of the University of Texas System*, 122 F.3d 259, 263 (5th Cir. 1997). The evidence of pretext must be more substantial than pure speculation; Harris must provide sufficiently specific reasons for his allegations of pretext. *See Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 42 (5th Cir. 1996). That is, "[t]o establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice." *Nichols*, 81 F.3d at 42.

Here, Harris has made no showing that Rock Tenn's articulated reasons for its actions were false or that discrimination was actually a motivating factor; nor has Harris shown that discrimination was even a motivating factor in its decision. The unrefuted evidence reflects that Harris's superiors uniformly felt he was not a detail-oriented employee, and that Jason Bridges was such an employee. Because Harris has put forth no evidence that such a detail-oriented employee was not necessary for the waste water treatment position, summary judgment is

13

appropriate as to this claim.

*ii. Termination*

Harris also claims that when Rock Tenn terminated him in October 2011, it did so because he was disabled with sleep apnea and shift work disorder. Again, the *McDonnell Douglas* framework applies, and – again – assuming *arguendo*, that Harris has made out his *prima facie* case as to this issue, the court looks to Rock Tenn's proffered legitimate, non-discriminatory reason for terminating him.

To support its reason for terminating Harris, Rock Tenn provided the affidavit testimony of HR Manager, Melinda McGraw. As explained in detail *supra* where the court discussed Harris's FMLA claim, McGraw explained that Rock Tenn terminated Harris when he failed to provide the certification necessary for Rock Tenn to determine whether his intermittent leave status could be changed to one for continuous leave. Because the arguments of both Rock Tenn and Harris mirror the FMLA arguments here, the court sees no reason to re-visit them and finds summary judgment is appropriate as to this claim as well.

### 3. Title VII / Section 1981[4]

*a. Failure to promote*

Finally, Harris claims Rock Tenn violated Title VII when it refused to hire him as the waste water treatment operator because of his race. Harris also claims Rock Tenn terminated him based on his race. And for the last time, the court considers the *McDonnell Douglas*

---

[4]Because these statutory bases are functionally identical for the purposes of Harris's claims, the court will refer only to Title VII. *See Shackleford v. Deloitte & Touche, LLP* 190 F.3d 398, 402 n.2 (5th Cir. 1999) ("When used as parallel causes of action, Title VII and section 1981 require the same proof to establish liability.").

framework. To make a *prima facie* case in a failure to promote case, Harris must show that he was: (1) a member of a protected class; (2) he sought and was qualified for the position; (3) he was rejected for the position; and (4) after his rejection, the position was filled by someone of a different race or the employer continued to seek applicants with Harris's qualifications. *See Celestine v. Petroleos de Venezualla SA*, 266 F.3d 343, 354-55 (5th Cir. 2001).

Harris is an African-American who sought the position of waste water treatment operator or at least a position on the day shift. He did not get the position, and Rock Tenn hired Jason Bridges, a Caucasian. As discussed in detail *supra*, Rock Tenn provided as its legitimate, non-discriminatory reason for hiring Bridges that he was much more attune to detail and had experience in a leadership role. That argument applies equally to this claim, and as with the ADA claim, the court finds Rock Tenn met its burden of providing a legitimate, non-discriminatory reason for hiring Bridges rather than Harris.

In an effort to show Rock Tenn's argument as pretext, Harris points to only two instances that even remotely suggest race discrimination. First, he describes a night approximately ten to fourteen years earlier when he encountered his plant manager, Jimmy Guin, at a restaurant. Harris was with his Caucasian girlfriend at the time and said that Guin later questioned him about dating a white woman. He also said that Guin "did not approve of interracial dating," but the only evidence he had of that apparently was a vague statement made by a coworker who said "that's just the way [Guin] is." Additionally, Harris said when Guin saw a group of white men talking he would "walk by and not say anything." However according to Harris, when Guin saw a group of black men talking, he would tell them to get back to work. Harris could not recall when this latter event occurred, but admitted those two instances were the only evidence he had

15

to support his claim of racial discrimination. The court finds this is simply not enough.

Racially based comments, even when made by the decision maker and highly offensive under contemporary standards, have been found insufficient to prove racial animus when the use of such comments was infrequent and not related to the challenged decision. *See, e.g., Boyd v. State Farm Ins. Companies*, 158 F.3d 326, 329 (5th Cir. 1998). Here, the comments about which Harris complains are both so isolated and remote in time that no fact finder could reasonably find they had any causal relation to Rock Tenn's decision either to give Jason Bridges the waste water treatment job or to discharge Harris.

Next, Harris contends Rock Tenn's reasoning is simply pretext by arguing once again that because Rock Tenn allowed Harris to operate the starch machine until the machine was shut down and because it never reprimanded Harris while he operated the starch machine, a reasonable jury could find that its refusal to hire him as waste water treatment operator was because he was black. For the reasons discussed *supra* where Harris argued the reason Rock Tenn terminated him was because he was disabled, the court again finds summary judgment is appropriate.

*b. Termination*

Finally, Harris argues that Rock Tenn violated Title VII when it terminated him because of his race. The arguments made as to this claim have all been made, and the court's reasoning is the same. Rock Tenn has put forth sufficient evidence to show its legitimate, non-discriminatory reason for terminating Harris, and Harris has failed to show that such reasoning was a pretext for racial discrimination or that discrimination was even a motivating factor in its decision. Accordingly, the court finds summary judgment is appropriate.

IT IS, THEREFORE, ORDERED that the defendant's motion for summary judgment (# 43) is hereby GRANTED as to all claims.

IT IS FURTHER ORDERED that the defendant's motion to strike (# 50) is DENIED as moot.

IT IS FURTHER ORDERED that he defendant's motion for leave to file supplemental authority (# 55) is GRANTED.

SO ORDERED, this the 10th day of February, 2014.

    /s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE